Pentair Water Pool v. Hayward Industries, 2015-18-09, Mr. Boland. Good morning. May it please the Court. I'm Mark Boland for the appellant Pentair. This case involves a question where the Board made a critical error on claim construction. The Board purported to apply the Broadest Reasonable Interpretation, or BRI, standard to the claim language, and in doing so, it effectively read the invention right out of Claim 1. It read Claim 1 inconsistently with the disclosure and with the intrinsic evidence, including the plain language of Claim 1. And therefore, the construction that was applied by the Board cannot be the Broadest Reasonable construction. So Claim 1 is a focused claim. It's a method. It's got six steps. The 420 patent at issue here is not attempting to claim the whole world. The key inventive feature is the last couple steps of Claim 1, where after the steps go through an iteration where a controller senses an overheat condition. You want to read if to mean if and when? We want to read if to mean, Your Honor, cause and effect. The word if in the language triggers the effect. The word if is the cause of the effect. The word if dictates the effect. And that is the precise meaning of if, not only in the last clause. Why wouldn't the word be when then? If it's triggered, why wouldn't we see the word when? That's a good question, Your Honor. Yes, sure. So when signifies time? And it's Pentair's position, and I believe this is consistent with the record and the intrinsic evidence. When could, in some circumstances, define an event? But whether the triggered event occurs within a millisecond or a half a second or a second or two seconds after the triggering event, that specific time period of when is not of critical importance. That's a detail that a programmer of skill in the art could take into account when designing the program. What's disclosed and what's claimed is a logical sequence of steps where, according to the specification and according to figure 8, which is the claimed embodiment, essentially, you have a diagram. You have a logical diagram at 410. And above that, the controller is sensing the heat sink temperature. And you go down, and the sensing continues through a loop. Where it says yes, there's an attempt to restart the drive. And that is not discretionary. That's the result. And so in this case, what we have is a cause and effect situation that is very similar to what occurred in this court's decision in Altiras. And I believe Judge Lurie was on the panel in that case. It's cited in our brief. It's from 2003. And there was similar if clause that was characterized as conditional language. And the court found that due to the word if, its present mandated that the result occur. So in that particular case, the if language was found to be cause and effect. So what the board found or what the board read into the claim was essentially divorcing the fifth step, sensing from the sixth step of attempting to restart the drive. In other words, the board did not apply a cause and effect relationship. The board essentially said, under claim one, there's a sensing step. And separately, there's a restarting step or an attempt to restart step. And those two are not linked. The board read the linking and the cause and effect right out of claim one. And in doing so, it used language that the attempt to restart can occur at any time or at some point. And if the temperature happens to be below the second sense temperature, you have claim one. And we respectfully submit that that construction is way overbroad. It's divorced from the specification. There's no indication in the 420 specification. The main description of this embodiment is at the bottom of column 19 and the top of column 20. And it's discussing figure eight. And there's no indication that there can be an indefinite or indeterminate delay between the sensing and the result. The Alturas case that you cited, I thought that that was actually not particularly helpful to your side. I'm just reading from the text here. The claim term was booting normally if said testing automatically indicates a normal boot segment. The court read that to indicate that the testing step must occur before the computer boots normally. Not that, as you were saying, there can be no intervening event. Why is that case helpful to you? Thank you, Judge Bison. I believe that in that case, the court was saying that the testing step determines whether the automation boot sequence occurs. So it's a condition preceding. Well, it's a condition. If the if language was given conditional effect, then that's cause and effect. Condition precedent, you could call it too. And in our view of the claim language here, if does not permit discretion. When the claim says attempt to restart, if the temperature is below the second predetermined temperature level, attempt to restart. And that's the critical distinction over the prior art. For example, at the outset of the reexamination, the petitioner and our friends Hayward sought to have claim one found unpatentable over this Baldor reference. Baldor is probably the closest reference in the record as far as we're aware. And the examiner found that Baldor alone did not teach the last two sensing and attempting to restart steps as claimed. So the board did pick up a rejection which involved Danfoss as a secondary reference, which I'll get to momentarily. But the key distinction is that Baldor bases the attempt to restart on a timer. There's a time delay. It can be from zero to 60 seconds. There can be up to eight attempts over 10 minutes. And if the restart is not successful during that time frame, the system shuts down and it will remain shut down until a human intervenes at some point in time. Similarly, in the Danfoss reference, there's a shutdown. So Danfoss and Baldor both get to the shutdown point. But what Danfoss does, and we've spelled this out as clearly as we could in our briefs, Danfoss shuts down, there's a trip lock, an alarm is triggered, and it requires a human being to go reset the drive. We've quoted the language in Danfoss. It can be reset manually in one of three ways, one of which is pushing the reset button. And power has to be – you have to cut the power off and then reapply it. You're basically rebooting the system in Danfoss before there can be a manual restart. So Danfoss is purely manual after you get the initial shutdown because things are too hot. And in fact, at page A11882 and then 884, there's specific findings again by the examiner on the record indicating that Danfoss specifically teaches away from an automatic restart. So besides the claim construction issue, Your Honors, we respectfully submit that it was improper to combine those two references. They may be common up to a shutdown point, but after that they diverge significantly in this particular world. Danfoss is a manual reset and then restart, and Baldor is simply restarting based on a timer. If Baldor gets to the point where the attempts to restart have been exhausted and the system's shut down, Baldor then gets into a human operator world. An example that we gave in our briefs is that one embodiment covered by this claim is a pool, a swimming pool. I'm not saying the claims are limited to a pump for a swimming pool, but that's what the commercial dispute is about that underlies this case. A pool pump is typically unattended by the owner. And so if a Danfoss or Baldor system were used and there was a motor overheat situation and no one was around, according to Danfoss, that pump could be down for two weeks. If the owner was away, he'd come back, he'd have a pool that was green because pools quickly turn green from algae and other invasive materials. In Baldor, if the restart attempt cycled through eight times for ten minutes, were unsuccessful, a Baldor situation would result in the same type of analogy. Claim one of the 420 patent ensures that the problem that caused the shutdown is resolved before the attempt to restart is made, and that's the critical difference. And so we respectfully submit that A, the claim construction was overbroad, and a proper claim construction would result in a clearly patentable claim. And second, even under a broad construction, the combination of references shouldn't have been made in the manner that the board did for the reasons presented in our brief and as I briefly touched on here. And I'll reserve the rest unless- We will save the remainder of your time, Mr. Baldwin. Thank you. Mr. Mikulski. Thank you. Good morning, your honors. May it please the court. In this legacy inter-parties reexamination proceeding, the board correctly held that claims one through four of the 420 patent are obvious in view of the Baldor reference and the Danfoss reference. These are two very analogous teachings and references. That finding of obviousness was well supported. I'd like to make three points to your honors that are important in response to Panter's position. First, the board's claim construction was correct and was proper. Second, your honors, the obviousness determination made by the board is proper under the board's construction and even under Panter's construction if the court chooses to adopt that construction. Thirdly, your honor, there are alternative grounds of affirmance that this court can look to to substantiate the obviousness finding. Turning to the claim construction issues, your honor. Would we run into Chenery problems on the third round? I'm sorry, your honor? Do we run into Chenery problems in seeking to affirm the board on the ground that was not the one adopted by the board? I don't think so, your honor, and I think it's just additional evidence that this court could look to if it wanted to substantiate. You know what I mean when I say Chenery. I don't. The basic doctrine of administrative law that whereas a court can affirm a district court on grounds that are different from the ones that are even rejected by the district court, you can't do that with an administrative agency. You have to take the administrative agency's position and call it yes or no, and if there are additional grounds, it has to go back to the administrative agency for the administrative agency to decide that question. I don't know the answer to that question, your honor, but I think that with the references that are in front of the court, particularly the ones that were adopted, that is sufficient for the court to uphold an obviousness determination. Turning to the claim construction issues, your honors. The board correctly concluded that the term attempting to restart the drive to the motor if the second temperature value is less than the Lippo temperature limit sets forth a condition precedent. It does not set forth the cause and effect relationship that opposing counsel has argued, and it certainly does not set forth an immediate cause and effect relationship that has been advanced. The claim language itself, your honors, when we look at the claim language itself, it merely says that there is a condition precedent. It doesn't say the words only if. It doesn't say if the restart attempt occurs in response to, and none of the causation words that opposing counsel uses now to characterize its claims. They don't appear in the claims themselves. Additionally, your honors, when we look to the specification itself and look at the teachings of the 420 patent, the 420 patent only describes the words using the words can, for example. The procedures that are set forth in Figure 8 use the word can. An attempt can occur. And additionally, your honors, the board found that Claim 1 only covers part of what is in Figure 8. It doesn't cover all of it. And because of that, it was reasonable for the board to interpret this term as something that is nothing more than a conditioned precedent to a shutdown. The obviousness issues, your honors, turning to those issues, the board's obviousness determination is well supported by substantial evidence. Again, either under the board's claim construction or even under Penter's claim construction. The Baldor reference teaches virtually all of Claim 1. It is a variable frequency drive. It has the ability to sense a heat sink over temperature condition. It has the ability to trip that drive if the heat sink temperature is too high. And it shuts it down. And it also has the ability to do an automatic restart. The automatic restart is not responsive to the lowering of temperature. Is that right? Well, your honors, we believe that that teaching comes from Dan Foss. Well, right. But Baldor itself will just start without regard to whether the temperature has gone down beneath a safe level. Right. Your honors, one of the points that Dr. Ahmadi in our proceedings had set forth in his declaration is that he understands that temperature is a gating item to a restart even in the situation with Baldor and the teachings of Baldor. And that's because of this concept of oscillation. According to Dr. Ahmadi, in variable frequency drive space, if you only had one temperature value, the system would go into a state of oscillation. It would trip and then it would restart. It would trip and then it would reset. To avoid that, there are two – Professor Ahmadi states that there are two values, an upper temperature limit and a lower temperature limit. His understanding is that that is present in – and a person of ordinary skill in the art reading the Baldor reference understands that that is present in there. Of course, responding to a significant decrease in temperature wouldn't be the only way to avoid the oscillation problem. You could also put in a period of time. That's correct. It would be a form of oscillation, but it would be very slow. You wouldn't have the kind of problem that you would have with the instantaneous efforts by the machine. Correct. So is there any portion of Baldor that we would look to where we would say that's where the lower safe level temperature is the trigger for the resumption of that specific restart? Yeah, there is some discussion in Baldor that when you have a fault condition and it trips that there should be – that fault condition should be dealt with first before there's a restart. And I think that that is a teaching that says you want to wait for this condition to be alleviated, this temperature condition to be alleviated before you attempt to restart. Otherwise, you will get into an oscillation state. Your Honors, the teachings that are taken from Danfoss are very narrow, and they're very specific teachings, and it was proper for the board to take those teachings and use them in the context of Baldor. First of all, Danfoss teaches that there's a sensing of multiple heat sink temperatures even after shutdown. Secondly, it teaches that there is a sensing of a lower temperature value, a lower heat sink temperature value. And in fact, in the Danfoss system, it discloses that there's a shutdown if the temperature is above 80 to 90 degrees. It trips the drive if it's above that value. It also explicitly discloses that one should wait and that the system waits until the temperature is lower than 60 degrees in order to permit a reset attempt to occur. It doesn't have an automatic reset though, right? That's correct, Your Honor. It has manual reset, but it won't even allow you to go in and reset until you hit 60? Is that the way it works? That's correct, Your Honor. It prohibits a reset from happening until the temperature value is below 60. But once those teachings are incorporated into the system of Baldor, Baldor has to automatically restart. So what would happen is the temperature would be – the lower temperature from Danfoss becomes the gating item for there to be the automatic restart that is tripped in the Baldor system. So, Your Honors, there are multiple grounds here that this court can rely on to support the obviousness determination. And we respectfully submit that the claims are invalid in view of the cited references. Does the court have any further questions? Well, I think you may have already addressed this, but there's a separate argument made that even under the board's claim construction, we'd long to find the disputed claims to be obvious. To the extent that you haven't addressed that by your discussion of Baldor and Danfoss, do you want to address that? Sure, Your Honors. So in the situation where you have a – if you were to take Penter's claim construction, for example, that there is a trigger present, that is taught by the combination of these two references. It is taught by Baldor and Danfoss in combination because Dr. Amati testified that it would be beneficial to avoid oscillation. It would be beneficial to have a situation where you have two different temperature values. You're really relying on Dr. Amati, is that correct? Professor Amati. Professor Amati. You're really relying on him to bridge the gap in that respect, aren't you? Well, not necessarily, Your Honors. We're relying on him for the motivation to combine the teachings. But also for an interpretation as to what a person of ordinary skill in the art would interpret Baldor to contain. That's correct, Your Honor. What it would contain is both the extent of its disclosure and the rationales for combining the references together. Your Honors, so there are sufficient rationales that the person of ordinary skill in the art would want to take the teachings of Danfoss and incorporate into Baldor. The Baldor system tries to avoid an over-temperature condition. It trips. It can restart itself. Having that additional teaching in there of using the second temperature level avoids the oscillation condition, and it also meets the limitations of Clingman. Unless the Court has any further questions, I would say thank you. Thank you, Counsel. Mr. Boland has a few minutes. Thank you. Just a couple brief rebuttal points. Judge Bryson, in Baldor, regardless of what Dr. Amati says, you ask counsel, where is it in the document that there's any disclosure of temperature being a trigger? And I can assure the Court, there is none. It's simply not there. And all that's there is a timer. Second, Danfoss was found by the examiner at the site I gave in my opening comments to expressly teach away from an automatic restart, and it's manual. So the so-called sensing of temperature that the Board allegedly took from Danfoss and plugged into Baldor to allegedly meet our claims, what that is, as we briefed, it's a temperature that's sensed, and the number is put on a display. It's put on a screen. It's not monitored electronically in any way. So let's take that displayed temperature and add it to Baldor. So you have Baldor now with its timer, and it's got up to 10 minutes to try to successfully restart, and you have a disassociated displayed temperature. First of all, why would you do that? There's no rationale disclosed with specific findings supported by substantial evidence that would give you the how or why or what would happen to make this combination. So first of all, why would anyone do it? You're adding a superfluous feature from Danfoss into Baldor, which would seemingly work fine for its own purposes on its own. Second, if you took that displayed temperature from Danfoss and put it into Baldor, presumably an operator would still have to come by and notice what the temperature is. And then if perhaps Danfoss or Baldor's system had already been completely shut down because the restart attempts expired, presumably then an operator could do something, but we submit that's not the claimed invention at all. And so unless the court has further questions, I see my time is up. Thank you. Counsel will take the case on revision.